Deborah A. RINDAHL, Respondent,

v.

BRIGHTON WOOD FARMS, INC., and
Aetna Life and Casualty
Company, Relators.

No. C7–85–1844.

Supreme Court of Minnesota.

March 14, 1986.

Donald W. Anderson, Minneapolis, for relator.

John R. Bridell, Minneapolis, for respondent.

Considered and decided by the court en banc without oral argument.

SIMONETT, Justice.

We conclude a finding by the compensation judge (affirmed by a divided Workers' Compensation Court of Appeals) that an employee's depression was caused by her work-related injury is manifestly contrary to the evidence and reverse the compensation award based thereon.

In early 1980, employee Deborah Rindahl, age 20, was living with her boyfriend and taking a vocational school course on horse care and barn management. On April 27, 1980, while interning at Brighton Wood Farms, she fell from a hayloft, landing on her feet, fracturing her lower left tibia and her right heel bone. She received compensation for temporary total disability to August 11, 1980, and 15% permanent partial disability of the right leg. In February 1984, the employee brought this proceeding seeking additional temporary total and temporary partial disability benefits for a disabling depression and a temporomandibular joint syndrome (TMJ syndrome) allegedly caused by her work-related injury. Employer Brighton Wood Farms and its insurer, Aetna Life and Casualty Company, denied either the depression or the TMJ syndrome were caused by the fall. The compensation judge concluded the injury was a substantial cause of the employee's depression but not of the TMJ syndrome, and awarded benefits. The Workers' Compensation Court of Appeals, one judge dissenting, affirmed. The employer and insurer seek our review by certiorari.

The issue is whether there is substantial evidence to support the finding that the employee's injuries sustained in her fall from the hayloft were a substantial contributing factor in the development of her depression. We hold the evidence does not support a finding of causation.

Deborah wore casts on her legs for about 7 weeks. Her fractures healed well, with good results, and she returned to school in November 1980. She completed her schooling in May 1981, having again worked several of the winter months as an intern at a horse farm. Thereafter she has worked intermittently at three different horse stables. Since June 1983, she has lived at home with her parents, working a few months at a Target Store and, most recently, working part time in her mother's antique business. During all of this time, Deborah testified to continued depression. She cried easily, was lonely, often listless, and spent much of her nonworking hours sleeping. For example, while at Caravel Arabians from November 1982 through June 1983, she says she worked 84 hours a week and spent the rest of her time mostly sleeping. She testified to continued pain in her right heel and legs, and also pain in her back and jaw, as well as headaches.

The evidence at the hearing also established that after the accident Deborah's relations with her boyfriend deteriorated, and they broke up in December 1980, with Deborah then returning to live at her parents' home; that in April 1981 she had an abortion of an eighth-week pregnancy; that she left a job in September 1981 because of sexual advances by the employer and a discriminatory environment; that in December 1981 she was repeatedly harassed by a former acquaintance and had required police assistance; and that she had problems with her family relationship.

There is ample evidence that Deborah suffers from a disabling depression. She first saw a psyciatrist, Dr. Charles Haberle, in July 1983, and has seen him regularly since. She has also been evaluated by Dr. O. Paul Olson, a psychologist with Dr. Haberle's clinic. Both doctors say Deborah suffers from depression, a major affective disorder, but is not psychotic. Dr. Charles McCafferty, a psychiatrist who examined Deborah for the employer, agrees, too, with this diagnosis.

The issue, however, is whether Deborah's physical injuries contributed to cause the depression. Dr. McCafferty testified the employee's emotional problems were attributable to difficulties with interpersonal relations, her problems with employer, family and romantic relationships, and not her physical injuries. Of course, if there were contrary medical opinion on this issue, the trier of fact need not adopt Dr. McCafferty's view, and we generally leave a trier of fact's resolution of conflicting evidence undisturbed. But the situation here is not that simple. The compensation judge found causation, reasoning that "the anxiety, pain and disability resulting from her work-related injury are *logically* a substantial cause of the depression" (emphasis added). We do not think causation in this complex and subtle area of emotional distress is entirely a matter of logic, for it does not necessarily follow that because the depression came after the injury that the injury caused the depression. The compensation judge does go on to say, "I concur in the medical opinion of Dr. Haberle in this regard." But nowhere in Dr. Haberle's report does he connect the depression to the physical injuries. Rather, Dr. Haberle says Deborah told him she "was noticing considerable depression, which she states started after she had been fired from her job at Comfre[y]." Further on, Dr. Haberle says, "History was done relative to her background to some degree and I felt that she was depressed as part of a sequence that had happened to her *subsequent* to her injury * * *." (Emphasis added.) Dr. Olson, in his report dated August 24, 1983, says Deborah "admits to being depressed for about a year and a half about interpersonal relationships," and then goes on to say that his psychological testing indicated interpersonal difficulties. Dr. Olson does not connect the depression to the physical injuries. The employee attributes her depression to her injuries, but something more is needed. In this instance, where the healed injuries did not impair ability to work and other possible causes of depression are present, we think some medical opinion causally relating the depression to employee's physical injuries is required before the depression can be

found compensable under the workers' compensation system. *Cf. Sullivan v. Hagstrom Construction Co.*, 244 Minn. 271, 278, 69 N.W.2d 805, 809 (1955).

The finding that the physical injuries were a substantial contributing factor of the depression is without substantial evidentiary support and manifestly contrary to the evidence. We need not reach the other issue whether the employee was properly found to be an apprentice.

Reversed.